Next case your honor is number 311-0393 Wells Fargo Bank, N.A. Abilene v. Zimmers, Middletown, Alabama. Arguing for the appellate, Mr. Louis Bridges. Arguing for the Abilene, Mr. Cody Cogut. Mr. Bridges? Thank you. Good morning. Good morning. You may proceed. The record, the land, extraordinary remedies, and burden of proof. The foreclosure situation that exists throughout our country today is in large part a result of a deviation from strict adherence to the recording of land and the granting of extraordinary remedies without there being compliance with the burden of proof that has always existed. And the reason for this is that courts are overwhelmed, circuit courts are overwhelmed with the volume of cases. There are approximately 54 million residential mortgages in this country and the estimates are about 60%, 30 million are underwater. Now I've become consumed in this field for the past 3 years and I probably will be lucky enough to be alive for the next 10. This is something of major historical significance and around the country justices such as yourselves are addressing issues about how we're going to deal with this situation. And to them and you I say we can never sacrifice justice on the altar of expediency. That is what is being done, has been done less and less. There are people starting to step forward and say no, this is the most extraordinary of remedies that a civil court can grant. Taking away someone's home, their land, and what we're going to do to the communities and what the result is going to be is something that only time will tell. But the judiciary right here, right now has got a major role in deciding. Now we got to this situation. Counsel, if I can just ask, you're obviously, you used your couple minutes now and certainly your entire reply brief was in essence along the same theme and lines relating what happened with the securitization of mortgages. In your view of the role of the judiciary in this issue and in essence of picking up the pieces, are you saying specifically that justice requires that courts and specifically this court not allow banks such as Wells Fargo to successfully foreclose on property that's in default? Not at all. Foreclosure is a remedy that's necessary in order for banks to finance homes and other projects. Well, the Zimmers were given a very long redemption period and didn't step in until right after that even to question the process. That is correct. And I think a lot of the abuses in the foreclosure process, as most abuses are in any situation, were not readily apparent at first. But now they're becoming more and more apparent. We all know about the $26 billion settlement that was just an initial down payment for admitted foreclosure abuses. I brought out the recent audits by the Inspector General of the U.N. Department of Housing and Urban Development finding massive, over 4,000 foreclosures. The majority of times there was just not a sufficient record. And this is important, very important. We're not talking about just technicalities here, apart from the fact that we're talking about someone's home where their children live. But we're talking about the remedy. We can restructure mortgages if we deal with the person, the entity that really owns them. Because the entity that really owns them has a financial interest in restructuring the mortgage. They will be better off. The true owners of the mortgage will be better off. They want to restructure these mortgages. Right, but there is no issue of restructuring the mortgage here. No, that's not an issue. We are talking in broad strokes, broad brushes, yes, not about this case. Because this case, I think, is just the first of many that you're going to be hearing over the next few years. And I didn't mean to interrupt you, but I did. I'm speaking in broad strokes here. To get down to this case, I think I'm going to reply briefly. We went through about 13 deficiencies in the record. Now, we're talking about an extraordinary remedy here. And the burden shouldn't be on the defendant to come forward and point out deficiencies in the record. When a plaintiff is seeking, when a bank is seeking the extraordinary remedy of having someone go out and remove the kids' bicycles from the garage and put them in the street, then they should comply with everything that is required under the statute. And we got here because of cutting corners. And the way to deal with this situation is not to continue to cut corners. We got here because of the, you know, there's a failure to comply with a lot of the origination laws. You know, the rest of the TILA. And the banks set up this MERS to avoid the technicalities of recording. Now, you know, that could cost recorders and deeds around the country something like a trillion dollars, the estimates are. Now, we're not here to litigate that issue, and it's not an issue in this case. What I'm saying is the broad brush we got here by cutting corners. We can't get out of this situation by cutting corners and just expediting foreclosures and creating, you know, and decimating communities and turning communities around the country. Well, this foreclosure wasn't expedited, as I mentioned. Your clients got additional time on the statutory redemption period. What specifically, what issues specific to this case would you like to argue to this court? Well, as you know, I didn't come into the case until very late. They had a couple of predecessor counsels, and I don't mean to criticize them, but this is a new field of law, the way it's practiced today, a brand-new field of law, residential foreclosure defense is a new field of law. And I'm proud to say I'm one of the pioneers in this field. When I started, there wasn't more than 20 attorneys around the country that were going to the seminars, and it's growing now. But the specific points are that I went through in their reply brief. Now, each one of these alone is perhaps a small point, but combined together, they create a situation in which the record simply does not support a foreclosure. Yes, my client should have hired, you know, there weren't any foreclosure defense attorneys when this case started, but the ones that he did hire did raise the affirmative defense of standing, and that was never denied, and that was never litigated, and the court granted so many judgment finding that there was no material issue of fact, and that order was vacated, and it never made a finding on the standing issue. It never litigated the standing issue, never made a finding on the standing issue. And you've got the note. There is nothing in the record to show that the note was ever transferred to this plaintiff, and notes can only be transferred by an endorsement on the face of the note. And the question really, quite fundamentally, is they don't file suit in the name of MERS anymore, and the whole MERS concept has been eviscerated by all the legal commentators. The University of Cincinnati Law Review article that I gave you, Professor Adam Levitin of Georgetown University, who testified for two days in front of the Financial Crisis Investigation Commission, and whose 666-page report was his testimony verbatim, 220 pages. MERS is not sustainable. There's no mortgage even created. MERS didn't give money in exchange for a security interest in real estate, and that's the definition of a mortgage. So, I mean, that's really kind of an out-there argument, but there's no mortgage that was created. I'm not saying my client doesn't have a note that he owes money on. I'm not saying he doesn't have a mortgage. But this plaintiff doesn't have a right to foreclose on that note, and this plaintiff didn't have a right to get a judgment on that note based on the record. And if you're going to give them this judgment, then we're cutting corners, and that's what got us here in the first place. There are too many nonsense. I'm not saying that you throw out this mortgage, and they don't know it for you. Clearly, I'm not saying they don't have a note somewhere. To what relief are you asking? This matter should be remanded to the circuit court for further proceedings in which the issues of standing and the ownership of the note and the transfers and who's the holder in due course are litigated, because then we'll be dealing with the true, rather than the servicer, we'll be dealing with the true owner of the mortgage. And I'm not saying we're going to win the case and we're going to get the mortgage thrown out and the note thrown out. That isn't going to happen. And I've told every one of our clients, don't IRS if you think you're going to get the home free and clear of a note or mortgage. We are here to make sure that the law is complied with, and it hasn't been in this case. There has not been strict adherence to the requirements of the Illinois Mortgage Foreclosure Law. And for that reason, the matter should be remanded to the circuit court for further proceedings consistent with the ruling and all the issues to be litigated. Wasn't there a first district case that considered the merits? Yes. What was wrong with that decision? Where to start? MERS, first of all, what's a nominee? You know, the nominee, the power to react on behalf of, and it also means the mortgagee. Well, they're not a mortgagee because they didn't give any money. The lender, the very instrument is somebody else. In this case, American Home Mortgage, which doesn't exist anymore. Just a brokerage. So MERS didn't give any money. MERS was set up to avoid recording, which has cost our recorders of deeds around the country are lining up to sue MERS and to sue the banks for all the recording fees that they lost out on. It's that type of cutting corners because securitization involves about four or five transfers of the mortgage from a broker originator to a couple of what are called REMICs, real estate mortgage investment conduits. Are you saying that if the title company was asked to prepare a report for purposes of foreclosure that it would go to the recorder of deeds and find no chain of title? In this case, you would find an assignment way after the fact, three years after the fact, obviously created for purposes of this lawsuit. But again, you don't have any transfer of the money. Why would that be defective so long as intervening bonafide purchasers for value didn't show up prior? Well, number one is MERS is not the mortgagee. The mortgagee is the lender. Okay. Number two is just the nominee. And the assignment in this case, if I recall, is just an unsigned scribbled something, you know, just, you know, Vice President of MERS without even a name, as I recall. I could be wrong on that one. There are so many of these cases I'm getting mixed up now. So you're saying that the filing was a defective filing in that it didn't create a lien and for purposes of discussion, then the time at which it was filed would really not be material unless somebody was making a superior claim. This case is not nearly as egregious on the recording issue because there is a recorded assignment in this case. And, you know, I've got to deal with the facts of this case. This case, the chain of title is not perhaps, we do have an assignment that was recorded, albeit a couple of days before the lawsuit was filed to foreclose. But it doesn't. Would it have had to have been recorded? No. It does not have to be recorded at the time. There has to be an assignment, but there has to be. We just don't think there wasn't an assignment three years after the fact. The purpose of recording is to do nothing more than place third parties on notices. Yes, but the citizens of this state constituted a recorder of deeds office to keep track of the ownership interests and the various ownership interests of properties in their communities. And the whole birth situation, the whole birth setup was designed to avoid that. Wait, wait, wait. Avoid that. What's the pronoun that relating to or what does that mean? The recorders of deeds, the elected officials in our communities, keeping track of the various ownership interests of property and they're being in place in this community where we can go right now and see who has various ownership interests or claims various ownership interests in a particular tract of land. The birth situation, the whole birth setup, births is intended to be owned by the major bank servicers. Not to mention the conflict of interest. Mortgage electronic registration. They have a right to register by electronic means the transfers as they pass these mortgages through. That is what the citizens of this state set up, constituted. We constituted this court and this government and the government at the same time. One of the institutions we constituted was a recorder of deeds office for that purpose. We did not delegate that to the banks who are owning the mortgage. Our country was founded on the principles that land and liberty are inextricably bound by Jonathan Locke. And when you start subcontracting to private entities, banks, the keeping track of the records of ownership interests of real estate in the other land, you are turning over not just the land but our liberty to them. That's not what we, the citizens, constituted. We constituted a recorder of deeds office and the recorder of deeds groups around the country would join me on this. We are the ones to keep track of loans. And if we had adhered to that principle, if we had strictly adhered to that, we would not be in the situation we are in today. In which HUD is finding that 9 out of 10 mortgages are based on faulty documentation. Faulty, fabricated documentation. It may not be in this case. There may be a valid assignment in this case. In fact, to be honest with you, I suspect there is. But that's just one aspect. And that's just one thing is why we can't just rush these foreclosures through no matter how many there are. We're not going to clear the dockets of the foreclosure cases no matter how many the circuit courts go through. They can start putting through 1,000 a day and there's 13,000 being filed every month in Illinois. So we're not going to clear the dockets. So let's just get that. The way to clear the dockets is perhaps start forcing some, start finding out who the true owners are and start restructuring. That is the only solution to this situation. Counselor, the thrust of your argument today is that we really need to focus on procedures and make sure that they're adhered to properly. Is that correct? I mentioned 13. Excuse me. Is that correct? Yes, I mentioned. And your reply brief is essentially, as I referred to earlier, I would call it a policy paper on the security, securitization of mortgages, the role of the judiciary. There is not one case citation, not one response to the arguments that were made in the blue brief by the appellees. And in essence, on its face, it certainly doesn't comply with the Supreme Court Rule 341J as to what a reply brief must be. So why should your reply brief not be stricken? I think because I disagree with the second point, with all due respect. I believe it did address the, because the record was raised in the blue brief. And from pages 9 through 14, I mentioned no less than 14 indisputable deficiencies in the record that the foreclosure should not have been granted. And you might ask the plaintiff's attorney, would you have given the chance to correct each one of these 14 deficiencies in the record? Would you not rather be here without these 14 deficiencies in the record? Or any one of them. Is there any one of them that you, that you really would be happy with? And if you had to do the case over again, and you were the circuit court, you wouldn't correct each and every, you wouldn't address each and every one of these 14 deficiencies. And do try to find out some evidence, if you had the evidence, to address each and every one of these 14 deficiencies. And my point is that you cannot, the extraordinary remedy of foreclosure cannot be granted when there's these many deficiencies in the record. And whether the consumer should have hired an attorney sooner and had the attorney raise this, or whether, you know, the court simply should not have it, even in a default. Even if the consumer's never hired an attorney, never appeared in court. That doesn't mean you forfeit your land if the plaintiff doesn't show these 14 things. Because we're talking about the land. Your time is up, sir. You only have a chance to make, or an opportunity to make rebuttal. Thank you. Thank you. Is it pronounced Kocanag? Kocanag, Your Honor. Thank you. May it please the court, I am Cody Kocanag, attorney for the appellee Wells Fargo. Today, Wells Fargo is asking this court to affirm the trial court orders dated January 12th, 2011 and March 22nd, 2011. I think Your Honors will recall that the primary basis of the appellant's case is that its motion to vacate orders of default was denied. And then its later motion to vacate the order approving sale, which was considered by the court to be a motion to reconsider, was also denied. One thing that I would like to remind the court is that the initial motion to vacate addressed, was stylized as a motion to vacate default orders. And in this case, defendant Simmers were, orders of summary judgment were entered against them. They were not simply defaulted in this matter. What about the standing claim that Mr. Bridges made? Standing was addressed. Or I should say lack of standing. Standing was brought up in the plaintiff's, the defendant's affirmative defense and was addressed in our motion for summary judgment, Wells Fargo's motion for summary judgment. So are you saying Mr. Bridges was incorrect when he said that there was no findings of fact or conclusions of law relative to the issue of standing? Your Honor, I believe that by the entry of the summary judgment against the defendants on a motion that was fully briefed and responded to by the defendants, the courts found that there was no issue of material fact which would prevent the entry of summary judgment. There was a recorded assignment, recorded assignment showing that the mortgage and note were assigned to Wells Fargo Bank. That assignment was recorded prior to filing the pleadings in this complaint. And it was supported by an affidavit and the plaintiff in their motion for summary judgment. The response to the motion for summary judgment simply pointed out that it was notarized in the state of Texas rather than the state where Wells Fargo is chartered and where it has its principal place of business. What it failed to point out was that Wells Fargo does have offices in the state of Texas and that nothing prevents them from notarizing their affidavits in that state. At the time the initial motion of AK was filed, also the plaintiff's motion for an order approving the sale was brought to the court at the same time. I know that this court is aware that there are limited circumstances in which the court can deny the plaintiff's motion to appoint, or I'm sorry, deny the plaintiff's motion to approve the sale. There seems to have been some contention relative to whether or not the judgment that was entered was an agreed order. What are the implications of the court's finding an issue of fact as to whether or not it was an agreed order? I think it's important to note that the court found that there may be an issue of fact. The court did not find that the order was not agreed. Secondly, the motion or an order for summary judgment was already entered against these defendants, and at that time the rights of the parties had been adjudicated. Whether or not the judgment of foreclosure and sale was agreed, I think is really of no moment. The rights of the parties were agreed or were adjudicated, and the defendants did not lose any rights whether or not the judgment of foreclosure and sale was agreed or not. The only thing they actually gained from that order was an extended redemption period, an additional 60 days in which to redeem the property. Is there anything you want to say relative to the by-brief? I'm aware of the 14 circumstances raised in the reply. I think that many of them are effectively waived because they were never raised in an answer. Many of them discuss not complying with the UCC. This is an Illinois mortgage foreclosure, and the plaintiff followed all the proper steps to comply with that statute, which governs the foreclosure of a residential property or the foreclosure of a property in the state of Illinois. He addresses point three states that BAC home loans was listed in the summons. Well, BAC home loans was the servicer of the loan at that time, and BAC home loans was the proper contact should they want to try and modify the loan. And the record will show that they were, in fact, in contact with them attempting to, well, with Bank of America, the successor to, to modify the loan. I don't see any... How would an extension of time in the judgment order normally be included? I believe the Zimmers were given an extension to redeem, were they not? They were given an additional 60 days, Your Honor. Typically, in this case, the redemption would have ended three months after the judgment. By law? By law, by statute, and they were given, and I think that this is where the agreement caption came in, was that they were given an additional 60 days beyond the statutory redemption period in order to redeem the property. Any other questions? No. Any other comments? No, thank you, Your Honor. Mr. Bridges? Thank you. Just two quick points. The standing also involves the note, and there was never anything in the record showing that the note was endorsed over to the plaintiff. The note was given to American Home Mortgage, and it is a UCC instrument, and there's no endorsement of the note to Wells Fargo. And yet they were given a judgment on the note, and that was a judgment that they bid at the sheriff's sale. So that makes it a commercially unreasonable sale, and justice is done otherwise done because the injustice is done, which is the fourth standard that Mr. Cody mentioned on the requirements for approving a sale. They were given a judgment on a note, and they never had possession of the note. There was no endorsement of the note over to them, yet they were given judgment on a note, and there's nothing in the record to support that. The second point is, there are three points. MERS executed the assignment to Wells Fargo. It wasn't Wells Fargo executing an assignment. It was MERS, somebody supposedly from MERS, who doesn't have any interest other than as a nominee. A name is a nominee, whatever that is. There's nothing to show, you know, the denominator ever indicated, so the assignment was executed by somebody purportedly from MERS, although I could get into something here that's not in the record, but the MERS database shows otherwise. We have access now to the MERS database and also the Bloomberg terminal, and so we're finding out, and this is something we shared with the state attorney generals, that they started doing the audits and started finding massive fabrication and a lack of documentation. And then the BAC, well, the BAC was a servicer. There is a requirement in the note, and here we're getting a strict compliance. Our clients were never advised, and if there's going to be strict adherence to the requirements, which is required to give the extraordinary remedy of foreclosure on a person's home, then they didn't strictly adhere. It's a condition preceded, and there's a requirement in the mortgage that's in the record that you give notice, and there's nothing in the record showing that our clients are given notice that BAC was the servicer. Thank you. Thank you. There will be another recess. We have one more case.